## Case No. 4,631.

### The FALMOUTH.

[1 Gall. 130.] [1]

Circuit Court, D. Massachusetts. May Term, 1812.

G. Blake, for the United States.
Amory and Dexter, for claimants.

STORY, Circuit Justice. The sloop Falmouth and part of her cargo have been libelled as forfeited, 1. Because the said cargo was taken on board of said sloop at Boston, without a permit, contrary to the 2d section and 5th section of the act of 9 January, 1809, c. 72 [2 Story's Laws, 1102; 2 Stat. 506, c. 5]; and 2dly, because the said sloop, being a licensed coasting vessel, after being laden under the inspection of the proper revenue officers, and after having received a clearance at Boston for the port of Eastport, being a port within a collection district, adjacent to the territories and colonies of a foreign nation, to wit, of Great Britain, did receive and take on board divers goods and merchandizes, viz. that part of her cargo which has been seized, contrary to the same sections of the same act. There is a third count, which on the trial has been abandoned.

It is admitted, that the facts proved fully support both counts, and the defence relied on is, that at the time of lading the said goods, which was on the 18th of April, 1809, the 2d and 5th sections of the act of 9th of January, 1809, had been repealed, and of course that no forfeiture has been incurred. The repeal is argued to be contained in the 14th section of the act of 1st of March, 1809, c. 91. That section declares, that so much of the acts respecting the embargo, as compels vessels owned by citizens of the United States, bound to another port of the said states, or vessels licensed for the coasting trade, &c. to give bond, and to load under the inspection of a revenue officer, or as renders them liable to detention merely on ac-

count of their cargo, shall be repealed from and after the 15th of March, 1809. But from the operation of this clause are excepted "such provisions as relate to collection districts adjacent to the territories, colonies, or provinces of a foreign nation, or to vessels belonging or bound to such districts." The whole controversy turns on the nature and extent of this exception.

The attorney for the United States contends, that the exception leaves the whole embargo acts in full operation, as to collection districts adjacent to a foreign territory, and as to vessels belonging or bound to such districts. The counsel for the claimants on the other hand contend, that all the provisions of the embargo acts stated in the enacting clause are repealed; and that the exception saves only such provisions or sections of the acts, as are exclusively directed to such collection districts and such vessels, as are stated in the exception. Now neither the 2d section nor the 5th section of the act of January 9, 1809, contain a single syllable exclusively applicable to such districts or vessels.

In order more clearly to understand the nature and force of the objection, we must review some of the provisions of the embargo acts. By the act of April 25, 1808, c. 66, § 6 [2 Stat. 500], no vessel is permitted to depart with a cargo from any port of the United States, for any other port or district of the United States adjacent to the territories, colonies, or provinces of a foreign nation, without the special permission of the president of the United States, under very severe forfeitures and penalties. The 12th section of the same act provides, that if any unusual deposits of provisions, lumber, or other articles of domestic growth or manufacture, shall have been, or shall be, made in ports adjacent, as aforesaid, the collector of the district shall be authorized to take them into custody, and to prevent them from being removed, until bonds are given for the landing and safe delivery of the same goods in some ports of the United States. These are the only parts of the embargo laws, which exclusively apply to districts adjacent to foreign territories, or to vessels belonging to or bound to such districts. And it cannot escape observation, that the terms of the exception seem exactly adapted to describe precisely such provisions. The exception necessarily is of some provisions named in the enacting clause; and the enacting clause covers all provisions applicable to vessels, bound from one port to another of the United States, and to detention thereof on account of the nature of their cargoes, and of course covers the two sections which I have quoted. By excluding these sections from the enacting clause, and considering them as within the exception, we completely satisfy the terms and natural import thereof. If the intention of the legislature had been, to leave the provisions of the acts in full force, as to such districts and vessels, the natural expression

---

[1] [Reported by John Gallison, Esq.]

would have been, that these acts should remain in force, as to such districts and vessels, not that some provisions, which relate to them, should remain in force. What are provisions, which relate to a particular subject? Certainly the answer must be, such provisions as definitely point to that subject, not such as embrace whole classes of subjects. Indeed, on a careful inspection, I am not sure, that the exception is not yet of a more narrow construction, and ought not to be restrained to the last preceding clause, to wit, that relative to detentions on account of the nature of the cargoes of vessels. In this view, the act would take from collectors all power to detain vessels, unless in districts adjacent to a foreign territory, or in cases of vessels bound or belonging to such districts. However, I incline to adhere to that which the counsel for the claimants have so elaborately expounded.

On the whole I cannot but consider the words of the enacting clause, "so much of the acts," &c. as meaning, so many provisions of the acts, and the words of the exception, as excluding the enumerated provisions from the operation of that clause. The former sweep away all general provisions, and the latter save those only, which point specially and distinctly to a particular purpose. If the construction of the act were even doubtful, I should unhesitatingly pronounce the same decision. When the legislature speak in clear and distinct terms, I am bound and with cheerfulness shall obey them. But when they choose "spargere ambiguas voces," I know no duty imposed on a court, to hunt through dark and doubtful passages, to catch a glimmering meaning, whereby to load the citizen with penalties and forfeitures. In a doubtful case, it is a sound rule of construction, that the words are to be expounded in favor of the citizen, and against the legislators.

I affirm the decree of the district court restoring the property.